IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HERMAN P. PRICE, aka RONALD DAVIS, *et al.*, | : : : | |
| | : | Case No. 1:09-cv-0118 |
| Plaintiff, | : : | Judge Boyko |
| vs. | : : | Magistrate Judge McHargh |
| LEE LUCAS, *et al.*, | : : | |
| Defendants. | : | |

### DEFENDANTS' PROPOSED DISCOVERY PLAN

Now come the Defendants, Lee Lucas, Robert Cross, Thomas Verhiley, Larry Faith, Matt Mayer, and Charles Metcalf and submit the following Memorandum detailing Defendants' position regarding discovery as requested by this Court in its Order dated April 12, 2011 (Docket #104) (*See* Order attached hereto as Exhibit A).

**I.      INTRODUCTION.**

The parties met and conferred on April 19, 2011 regarding a Discovery Plan and were unable to come to an agreement about the scope of discovery due to Plaintiff's unwillingness to accept the parameters established by Judges Gaughan and Oliver in the companion cases of *Danny Brown v. United States of America, et al.*, United States District Court, N. District of Ohio, E. Division, Case No. 1:07 CV 3750 and *Westerfield v. United States of America, et al.,* United States District Court, N. District of Ohio, E. Division, Case No. 1:07 CV 3518. (*See* Orders attached as Exhibits B and C, respectively).

After confronting a veritable mountain of legal briefs and the Sixth Circuit Decision in *Westerfield*, *supra*, Judges Gaughan and Oliver determined that twenty interrogatories would be appropriate discovery along with the deposition of Jamal Ansari. As Ansari has already been

deposed for seven hours and has been granted summary judgment in this case, the remaining Defendants suggest that the parties simply stipulate to the filing of his transcript in this case so there would be no need to depose this gentleman again. Finally, if there is any distinguishing characteristic between the events involving the drug buy of Plaintiff Herman Price *aka* Ron Davis and the buys involving Danny Brown and Jason Westerfield it would be that the Price buy was a central cog in the government's case against Lee Lucas and resulted in testimony from no fewer than eleven witnesses, including, Jerrell Bray, Lee Lucas, Herman Price *aka* Ron Davis, Geneva France, Alexis Younger, Karmiya Moxley, Larry Faith, Chuck Metcalf, William Stross, Kim Thomas, and Edward Mullen. Moreover, the other evidence already available to Plaintiff that is specific to his claims includes: the Lucas criminal trial transcript; the France criminal trial transcript; ten recordings and transcripts of Bray's drug conversations with subjects; Lucas' DEA-6 Investigative Report; Faith Affidavit and Search Warrant relating to the search of Price' residence; and Kim Thomas' detailed analysis of the relevant calls to Price and others. In effect, there is even <u>more</u> information available to Plaintiff Price than was available to the plaintiffs in the *Brown* and *Westerfield* cases.

**II.     LAW AND ARGUMENT**.

In the case of *Brown, supra*, Judge Oliver issued an Order regarding the extent of permissible discovery in light of the information available to Plaintiffs as a result of the Lee Lucas criminal prosecution. In that Order, Judge Oliver followed the precedent established by Judge Patricia Gaughan in the case of *Westerfield, supra*, dated November 5, 2010, Docket #144), and stated the following:

> Judge Patricia Gaughan of this Court recently addressed virtually identical issues regarding qualified immunity in her September 17, 2010 Order in *Westerfield v. The United States of America, et al.,* Case No. 1:07-CV-03518. Plaintiff Westerfield's case contains the same discovery materials provided by the Defendants in this case, and a nearly identical request

by Plaintiff for additional discovery to determine the qualified immunity issue. Judge Gaughan found that an extensive amount of material beyond what is usually available to a plaintiff prior to a determination on qualified immunity was already available to Plaintiff. Therefore, only additional limited discovery was necessary. The Court agrees with Judge Gaughan's reasoning and adopts the following parts of her Order:

> "The issue of qualified immunity is to be decided as early as possible in the course of litigation to ensure that government officials are not subjected to the expense and burdens of discovery. *Harlow v. Fitzgerald,* 457 U.S. [800], 81[7]-19 ([1982]); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Goad v. Mitchell,* 297 F.3d 497 (6th Cir. 2002). That being said, limited discovery may be appropriate where the complaint alleges the violation of a well-established constitutional right and the issue is whether the defendants, in fact, committed the alleged violation. See, *Crawford-El* 523 U.S. at 598.
>
> Rule 26(b)(2) of the Federal Rules of Civil Procedure vests this Court with broad discretion in framing a discovery plan. Specifically, the rule provides in relevant part as follows,
>
>> (A) By order, the Court may alter the limits in these rules on the number of depositions and the interrogatories or on the length of depositions under Rule 30, By order…, the court may also limit the number of request under Rule 36, ([C]) on motion or on its own, the Court must limit the frequency or extent of discovery otherwise allowed by these rules…if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.
>
> (Emphasis added).

Plaintiff asks the Court to permit him to propound written discovery and depose 13 individuals. In response, the individual Defendants argue that Plaintiff possesses a wealth of information. Specifically, Plaintiff points out that all but one of the 13 individuals testified extensively at Lee Lucas's criminal trial. In addition, Plaintiff possesses over 22,000 pages of materials relating to the alleged misconduct in Mansfield. Defendants further point out that the alleged misconduct had nothing to do with the sole charge for which Defendant was convicted.

In response, Plaintiff argues that evidence regarding the other individuals charged in the Mansfield drug conspiracy is relevant. According to Plaintiff, evidence of Defendants' participation in allegedly framing these other individuals, shows that it is more likely that Defendants were aware that Westerfield was framed. Plaintiff also claims that discovery is necessary to establish that Defendants committed *Brady* violations.

Upon review, the Court finds that Plaintiff is entitled to limited discovery. In this case, Plaintiff alleges the violation of a well established constitutional right and the issue is whether Defendants committed the violation. Thus, limited discovery is appropriate. *See*, *Crawford-El* 523 U.S. at 598. This Court must balance the interests of Defendants in avoiding the expense of discovery if no constitutional violation occurred with the interests of Plaintiff in obtaining sufficient evidence to properly defend against a motion for summary judgment based on qualified immunity. On the unique facts of this case, the Court concludes that depositions of individuals who testified at Lee Lucas's criminal trial are not appropriate. Plaintiff may, however, depose Jamal Ansari, a Defendant in this matter who did not testify at the trial. In addition, written discovery may proceed. Specifically, the Court finds that Plaintiff may propound 20 written interrogatories (including subparts) to each of the individual Defendants in this case. Plaintiffs are in possession of a wealth of evidence regarding the alleged misconduct in Mansfield. As all parties note, Plaintiff has 4,000 pages of trial transcripts and 22,000 pages of exhibits. Included among this information are the all investigative reports of the undercover transactions and proffers of the Mansfield Defendants, statements of Bray relating to the Westerfield deals, all audio and video recordings of the Mansfield transactions, as well as transcripts of the recordings. This is far more evidence than is generally available to a Plaintiff responding to a motion for summary judgment based on qualified immunity.

Plaintiff provides the affidavit of his attorney, who avers that this information is insufficient. With respect to each deposition Plaintiff seeks, counsel attempts to identify shortcomings in the trial testimony. By way of example, counsel indicates that Defendant Metcalf's trial testimony is insufficient because trial counsel did not "further explore Metcalf's reasons for believing that he needed to testify falsely in order to support the documents generated by others and in order to make his testimony mesh with the other officers." In the same paragraph, however, counsel indicates that Metcalf testified that he lied during the criminal trial of six of the Mansfield Defendants and that he did so because "he thought the other officers would as well, and that he wanted to testify consistently with them and with the case report." Similarly, Plaintiff recognizes that Metcalf admitted that he signed and swore to a false search warrant affidavit, written by someone else. Plaintiff, however, argues that a deposition is necessary to discover who wrote the affidavit and "who else was involved in perpetrating this fraud on the court...." Plaintiff makes similar arguments with respect to the other witnesses. For example,

- Counsel avers that John Ferster testified that he learned in 2007 that Bray had stolen money given to him for a drug buy and that Verhiley and Defendant Ansari knew of the theft when it occurred. Counsel avers that discovery is needed to learn why the "brazen theft" was permitted;

- Counsel avers that John Ferster drafted a 2007 memorandum describing "Lucas' pattern of rule violations and deviations from DEA procedure, as well as his patterns of false reporting, lying about what witnesses told him, [and] taking unauthorized actions...." Counsel avers that further exploration of these allegations is necessary because it is likely to lead to direct evidence that the frame-up conspiracy was intentional;

4

- Counsel avers that, although Defendant Mayer testified that he was personally involved in most deals, he was never asked about "other Defendants' involvement in the frame-up conspiracy generally," specific Brady material he or other Defendants failed to disclose, drugs Bray tried to conceal during one of his controlled buys, and other similar issues;

- Counsel avers that Dawn Brown testified that she recognized Bray as untruthful and that in February 2005 she began taking personal notes. She indicated that she strongly disagreed with operational decisions and that inaccuracies existed in one of Lucas's DEA-6 reports. Counsel avers that she needs to explore "who authored all false reports and who else was involved with, aware of, supportive of, or passive about the inaccuracies in the false DEA-6 report....;"

Counsel's affidavit outlines similar areas of inquiry for each of the proposed deponents. The Court, however, finds that focused interrogatories will enable Plaintiff to obtain the information he indicates is lacking from the trial testimony and the trial exhibits. Plaintiff already possesses significant evidence regarding the alleged constitutional violations. This Court's ruling will allow Plaintiff to propound interrogatories in addition to the 4000 pages of trial transcripts and 22,000 pages of documentary evidence. Given the wealth of evidence already available to Plaintiff, 13 open-ended depositions are unnecessary, time consuming, expensive, and will largely duplicate much of the information already available to Plaintiff. This Court finds that allowing Plaintiff to propound 20 written interrogatories (including subparts) to the Defendants who have already testified, in addition to taking the deposition of Jamal Ansari, properly balances the interests of all parties. (Judge Oliver's Order dated November 5, 2010, 1:07-cv-3750, ECF Document # 144.)

In this case, just as in *Westerfield* and *Brown*, the Plaintiff has been provided with over 4000 pages of trial transcripts and over 22,000 pages of documentary evidence arising from the Lee Lucas criminal prosecution. The documents in the Plaintiff's possession include the entire investigative files from the DEA and the Richland County Sheriff's Office.

In seeking additional discovery, the Plaintiff has relied upon the Sixth Circuit decision in *Westerfield v. United States*, 2010 WL 653535 (6th Cir. 2010). However, the Plaintiff is mistaken in asserting that *Westerfield* stands for the proposition that extensive additional discovery is automatically required. Rather, the *Westerfield* decision was rendered before the Plaintiff was provided with the extensive discovery now available. Furthermore, Westerfield expressly held that, "the district court may fashion an order that is limited to qualified immunity"

and that "limited discovery" was contemplated on remand. The trial exhibits and other documents provided to the Plaintiff in the time since the Sixth Circuit rendered its decision effectively fulfills the court of appeals mandate.

### III. CONCLUSION.

Accordingly, the Defendants jointly propose that this court follow the prior decisions of Judge Gaughan and Judge Oliver, limiting the Plaintiff's additional discovery to 20 written interrogatories. There is no need for this court to address the deposition of Detective Ansari. A seven hour inquiry was conducted by the same attorney representing the Plaintiff in this case as part of his prosecution of the Westerfield matter. The Defendants are willing to grant the Plaintiff any reasonable period of time for submission of the written discovery and anticipate responding to the interrogatories in accordance with the time parameters set forth in the Civil Rules.

Respectfully submitted,

/s/ Daniel T. Downey
**DANIEL T. DOWNEY (0063753)**
E-mail: ddowney@westonhurd.com
WESTON HURD LLP
10 West Broad Street, Suite 2400
Columbus, Ohio 43215
Phone: (614) 280-0200
Fax: (614) 280-0204


/s/ Michael M. Heimlich
**MICHAEL M. HEIMLICH (0037447)**
E-mail: Heilichlaw@AOL.com
103 North Union Street
Suite E
Delaware, Ohio 43015
Phone: (740) 362-1988
Fax:    (740) 362-1888

/s/ Joel J. Kirkpatrick
**JOEL J. KIRKPATRICK**
Ste. 350
31800 Northwestern Highway
Farmington Hills, MI 48334
Phone: 248-855-6010
Fax: 866-241-4152
Email: joel@Kirk-law.com


/s/ Thomas G. Roth
**THOMAS G. ROTH**
12 Fairview Avenue
West Orange, NJ 07052
973-736-9090
Fax: 973-736-8005
Email: tgroth395@aol.com


/s/ Gerald F. Kaminski

**GERALD F. KAMINSKI**
Office of the U.S. Attorney - Cincinnati
Southern District of Ohio
Ste. 400
221 East Fourth Street
Cincinnati, OH 45202
513-684-3711
Fax: 513-684-6385
Email: gerald.kaminski@usdoj.gov


/s/ Jan M. Holtzman
**JAN M. HOLTZMAN**
Office of the U.S. Attorney - Cincinnati
Southern District of Ohio
Ste. 400
221 East Fourth Street
Cincinnati, OH 45202
513-684-3711
Fax: 513-684-6972
Email: jan.holtzman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Daniel T. Downey
**DANIEL T. DOWNEY (0063753)**
*Attorney for Defendants Sergeant Matt Mayer,*
*Captain Larry Faith, Sheriff J. Steve Sheldon and*
*Richland County, Ohio*